UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JANICE B. HALL,

                    Plaintiff,

    -vs-                                       Case No.  6:11-cv-1673-Orl-31GJK

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

# REPORT AND RECOMMENDATION

       Plaintiff Janice B. Hall (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits.  Doc. No. 1.  Claimant maintains the Administrative Law Judge (the "ALJ") erred by: 1) failing to state with particularity the weight given to the Medical Source Statement of Ability to Do Work-Related Activities (Mental) offered by Dr. Felix A. Ortiz, a consultative examining psychologist; 2) failing to account for Claimant's moderate limitations in concentration, persistence, and pace in the ALJ's residual functional capacity assessment (the "RFC") and in the hypothetical question to the Vocational Expert (the "VE"); 3) applying an incorrect legal standard to Claimant's subjective statements and finding the same not credible without substantial evidentiary support.   Doc. No. 17 at 9-16.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

I.      **BACKGROUND.**

Claimant was born on August 6, 1962, and she has a high school education. R. 51, 70. Claimant's past relevant employment experience includes working as a teacher's aide.  Doc. No. 64.  On November 6, 2006, Claimant filed an application for benefits.  R. 51. Claimant alleges disability due to diabetes, acid reflux, chest pain, and depression.  R. 37, 612.  Claimant's alleges a July 30, 2006, onset date of disability.  R. 58.

II.     **MEDICAL AND OPINION EVIDENCE.**

The parties do not cite to any opinion evidence in the record from treating, examining, or non-examining physicians opining that Claimant has limitations greater than those ultimately found by the ALJ.  *See* Doc. No. 17 at 3-8; Doc. No. 20 at 5-16. The opinion evidence cited by the parties and/or discussed in the ALJ's decision, include the following:

- On April 21, 2006, after conducting an exercise stress test on Claimant, who complained of atypical chest pain, Dr. Maria Lopez opined that Claimant has "good functional capacity" (R. 191-93);

- On December 18, 2006, Dr. Donald Morford, M.D., provided a non-examining physical RFC based upon a review of medical records and opined that Claimant can perform light work with occasional postural limitations, should avoid exposure to hazards, and that Claimant may be exaggerating her symptoms (R. 288-95);

- On January 4, 2007, an advanced registered nurse practitioner, Marianne McCool, after conducting a psychological examination, opined that Claimant suffers from major depressive disorder and has a global assessment of functioning score of 45-55 (R. 332-

2

335);[1]

- On February 14, 2007, Dr. Jeff Oatley, Ph.D., conducted a consultative psychological evaluation of Claimant, noting that Claimant's mood was dysphoric; she displayed poor self-esteem, and had low energy.  R. 308.  Claimant's fund of knowledge appeared to be inadequate as she named Billy Graham as a recent president of the United States, and reported that there were 11 months in a year.  R. 308.  Dr. Oatley noted that "[t]he fund of knowledge . . . presented was inconsistent with being a teacher's assistant."  R. 308. Claimant was unable to focus on tasks during the exam, but she displayed no problems with concentration and focus during the personal history portion of the examination.  R. 308.  Dr. Oatley diagnosed obesity, rule out diabetes mellitus, rule out borderline intellectual functioning, adjustment disorder with depressed mood, and rule out malingering because Claimant "self-presents as having severe memory and concentration yet had very good medical and employment recall and remained on task when talking about her problems."  R. 309.  Dr. Oatley opined that Claimant "presents as not being capable of managing finances," but Dr. Oatley did not offer his own opinions as to Claimant's functional limitations.  R. 309;

- On February 23, 2007, Dr. Steven Wise, a psychologist, completed a Psychiatric Review Technique ("PRT") based upon a records review and opined that Claimant's adjustment disorder with depression is not a severe impairment.  R. 311-24.  Dr. Wise stated that

---

[1] More specifically, nurse McCool noted that Claimant's: mood was depressed; affect was flat; thought process was coherent, but slowed; fund of knowledge was fair; estimated intelligence was below average; attention and concentration were fair; and judgment and insight were fair.  R. 334.  Nurse McCool summarized that Claimant has "no interest in life or activities," only sleeps 2-3 hours per night, her anti-depressant medications had not helped, and Claimant has been unable to return to work.  R. 335.  On February 1, 2007, nurse McCool's treatment notes show that Claimant still appeared depressed, but had improved after being started on Trazodone.  R. 331.  Although the ALJ does not specifically mention nurse McCool's examination and opinion in the decision, Claimant has not raised any issue regarding the same.

Claimant's mental impairments result in only mild difficulties in maintaining concentration, persistence, or pace and noted that Dr. Oatley had opined that malingering needed to be ruled out.  R. 321, 323;[2]

- On August 8, 2007, Dr. Michael Zelenka, a psychologist offered a PRT and a mental RFC based upon a records review.  R. 336-53.  In the PRT, Dr. Zelenka opined that Claimant's affective disorder is a severe mental impairment, and it results in moderate limitations in maintaining concentration, persistence, or pace, and mild limitations in activities of dialing functioning and in maintaining social functioning.  R. 343, 350.  In Section I of the mental RFC, Dr. Zelenka opined that Claimant is moderately limited n the ability: to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; and to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods.  R. 336-37.  Dr. Zelenka noted that Claimant's mental impairments have "showed significant improvement" since beginning outpatient treatment in January of 2007.  R. 338.  Ultimately, Dr. Zelenka opined that despite the moderate limitations in concentration, persistence, or pace, "with allowances [Claimant] retains adequate mental ability to carry out simple [instructions] and to relate adequately to others in a routine work setting."  R. 338;

- On August 16, 2007, Dr. Eric Puestow, M.D., provided an RFC based upon a records review and opined that Claimant can perform light work with occasional postural limitations.  R. 354-61.  Dr. Puestow also noted that physical examinations "have been

---

[2] In the decision, the ALJ does not specifically mention Dr. Wise's PRT, but Claimant has not raised any issue regarding the same.

4

relatively unremarkable." R. 355;

- On March 16, 2009, Dr. Carlos Sanchez conducted a consultative physical examination of Claimant. R. 649-54. In general, Dr. Sanchez noted that Claimant provided "a very poor effort" throughout the examination. R. 649. Dr. Sanchez opined that Claimant's whole body strength is 4/5, but on "[e]very [range of motion] exercise [he] tried to have her demonstrate she acted like it was very painful or gave [him] very little effort." R. 649. Claimant displayed full range of motion in the upper and lower extremities, although tenderness was noted along the entire left knee. R. 650. Dr. Sanchez opined that claimant has low back pain and left knee pain, but stated that it was difficult to assess because Claimant "did not really participate in the examination." R. 651;

- On April 7, 2009, Dr. Oatley conducted a second psychological examination of Claimant, noted that Claimant was not compliant with portions of the evaluation, diagnosed Claimant with major depressive disorder recurrent "as indicated by depression for no apparent reasons, diminished interest in activities, obesity, insomnia, psychomotor retardation, fatigue, and diminished ability to think." R. 659. Dr. Oatley opined that Claimant's prognosis is fair, but she "appears incapable of managing finances." R. 659. Dr. Oatley did not offer his own opinion regarding Claimant's functional limitations, but described self-reported limitations. R. 659;

- On April 21, 2009, Dr. Wise provided a second PRT based upon a records review and opined that Claimant's mental impairments are not severe because they result in only mild functional limitations. R. 660-672. Dr. Wise stated that based on the medical record he does not find Claimant's self-reported limitations credible due to poor effort on

physical and psychological evaluations.  R. 672;[3]

- On that same day, Cassandra Dorsey provided an RFC based upon a records review and opined that Claimant can perform medium work.  R. 674-81;

- On August 10, 2009, Dr. Nicholas Banks, M.D., provided an RFC based upon a records review and opined that Claimant can perform light work with occasional postural limitations and the need to avoid hazards.  R. 693-700; and

- On that same day, Dr. Gary Buffone, a psychologist, provided a PRT based upon a records review.  R. 701-14.  Dr. Buffone opined that Claimant's mental impairments are not severe because they result in only mild functional limitations.  R. 701, 711.  Dr. Buffone noted that Claimant consistently made poor efforts on evaluations and her response are not credible.  R. 713.

The only other relevant opinion evidence consists of consultative psychological evaluation (R. 791-94) and a Mental Source Statement of Ability to Do Work-Related Activities (Mental) (R. 795-97) completed by Dr. Felix Ortiz, a psychologist.

On January 5, 2011, Dr. Ortiz conducted a psychological evaluation of Claimant.  R. 791-94.  Dr. Ortiz's notes reflect that Claimant: understood the nature of the evaluation; was driven to the examination; dressed appropriately; displayed unremarkable gait and posture; displayed no significant problems with motor functioning; had relevant, coherent, and logical speech; provided adequate eye contact; had a positive attitude, but engaged in poor level of cooperation and effort; displayed significant difficulties giving specific information and dates, but the information provided appeared reliable and accurate.  R. 791.  Dr. Ortiz opined that Claimant

---

[3] The ALJ does not discuss Dr. Wise's second PRT in the decision, but Claimant raises no issue regarding the same.

meets the following criteria for depression: "depressed mood, loss of interest in activities, irritability, sleep disturbances, appetite disturbances, loss of energy, psychomotor agitation or retardation, concentration problems, ruminations, feelings of worthlessness or guilt, tearful episodes, and thought of death."  R. 791.  Dr. Ortiz described Claimant's current level of symptoms as "moderate."  R. 792.

Mental status examination showed that Claimant: was orientated to person, place, and time; thought content was unremarkable; and Claimant's fund of knowledge was appropriate to her age and education. R. 792.  With respect to Claimant's attention and concentration, Dr. Ortiz stated:

> Attention and concentration were limited as evidenced by an inability to complete tasks of alphabetic and numeric reiteration without errors.  Speed of processing was limited as evidenced by an extended amount of time required to complete the tasks presented.  Construction was remarkable for a distorted design and the [Claimant's] visual-motor coordination was determined to be poor.  Mental flexibility was severely impaired as evidenced by an inability to complete simple tasks of serial calculations or backwards word spelling.  Auditory and written receptive language was moderately impaired as evidenced by an inability to complete most verbal commands presented without errors. Immediate memory was moderately impaired as evidenced by the client recalling 1 of 3 words immediately being presented the list of words.  Recent memory was severely impaired as the client recalling 0 of 3 words without prompts.  Mental computation was severely impaired as evidenced by an inability to complete basic verbal arithmetic problems.  Written computations were severely impaired as evidenced by an inability to complete basic written arithmetic problems.  Reasoning appeared impaired.  Judgment related to self care and social problem-solving was limited.

R. 793. Dr. Ortiz administered a Wechsler Adult Intelligence Scale test, but the results were not valid because Claimant answered "I don't know" to every question and displayed a lack of effort and participation.  R. 793.  Dr. Ortiz also administered a Milton Clinical Multiaxial Inventory

test, which showed that Claimant "has a tendency to magnify illness and exaggerate her symptoms." R. 793. Dr. Ortiz diagnosed Claimant with major depressive disorder, recurrent, and stated she had a current global assessment of functioning score of 50. R. 793.

Dr. Ortiz ultimately opined that Claimant may be malingering, but based upon her self-report and his observations, her symptoms "appear to be moderately impacting activities of daily living, vocational performance, and interpersonal interactions." R. 794. Dr. Ortiz stated that Claimant's prognosis is guarded and she is not capable of managing her finances. R. 794. R. Ortiz recommended: immediate participation in mental health counseling; consultation with a psychiatrist to evaluate medications; behavioral and case management services to assist with deficits in activities of daily living; and an evaluation by a pain management specialist. R. 794.

On January 18, 2011, Dr. Ortiz completed a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." R. 795-97. The instructions on the form ask that Dr. Ortiz assist "in determining [claimant's] ability to do work-related activities on a sustained basis," and defines "sustained basis" as "the ability to perform work-related activities eight hours a day for five days a week." R. 795. Dr. Ortiz opined that Claimant is moderately limited in the ability to: understand and remember detailed instructions; carry out simple instructions; to make judgments on simple work-related decisions; and to interact appropriately with the public, supervisors, coworkers, and to respond appropriately to usual work situations and to changes in routine work setting. R. 795-796. The opinion defines "moderate" as "more than a slight limitation . . . but the individual is still able to function satisfactorily." R. 795. Dr. Ortiz opined that Claimant is markedly limited in the ability to: understand and remember complex instructions; carry out complex instructions; and to make judgments on complex work-

8

related decisions.  R. 795.  The opinion defines "marked" as a "serious limitation" with "a substantial loss in the ability to effectively function" in an eight-hour workday for five days a week.  R. 795.

## III.   ADMINISTRATIVE PROCEEDINGS.

On June 21, 2011, a hearing was held before ALJ Patrick McLaughlin.  R. 804-30.  Claimant, who was represented by counsel, and VE Lorin Lovely were the only persons to testify.  R. 804-30.   Claimant testified that she cannot work due to diabetes, arthritis in her left knee, pain, depression and anxiety.  R. 808, 812, 814, 816-18, 820.  Claimant testified that she can sit for five minutes without having to stand up, she can stand for ten minutes without having to sit, she can walk only as far as the restroom in her home, and she can lift one pound with both hands.  R. 813-14.  During the hearing, Claimant's attorney, referencing the findings in the Mental Source Statement, suggested that Dr. Ortiz's opinions support a finding of disability, and the ALJ responded that it is consistent with the ability to perform simple work.  R. 828.

The ALJ posed a hypothetical question to the VE which limited the individual to: light work with occasional climbing, balancing, stooping and crouching, but not kneeling, crawling, and the need to avoid heights, hazards, and pulmonary irritants; simple, routine, and repetitive tasks; and occasional contact with the public, co-workers, and supervisors.  R. 821-22.  The VE testified that such an individual could not perform Claimant past relevant work, but could perform work as a garment sorter, maid, and laundry sorter.  R. 822-23.[4]

On July 25, 2011, the ALJ issued a decision finding Claimant not disabled since July 30, 2006, the alleged onset date.  R. 446-55.  At step-two, the ALJ determined that the Claimant has

---

[4] The ALJ posed a second hypothetical question to the VE, but the limitations set-forth above correspond to the ALJ's actual RFC assessment.  R. 821-22

the following severe impairments: diabetes mellitus type II, gastro esophageal reflux disease, obesity, and an affective disorder. R. 448. The ALJ also found that Claimant's mental impairments result in moderate difficulties maintaining concentration, persistence or pace. R. 449. The ALJ stated that the RFC assessment provided at step-four "reflects the degree of limitation the [ALJ] has found in the . . . mental function analysis." R. 449.

The ALJ determined that Claimant retains the RFC to perform light work, including: "during a normal 8-hour work day, she can lift/carry 20 pounds occasionally and 10 pounds, frequently; she can sit for up to 6 hours and stand/walk for up to 6 hours; she can occasionally climb, balance, stoop, or crouch, but can never kneel or crawl; she is able to perform simple, routine, repetitive tasks; and, she is capable of occasional  interaction with the supervisors, co-workers, and the public." R. 450. In making that RFC assessment, the ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they are inconsistent with the ALJ's RFC. R. 450. In making the credibility finding, the ALJ discussed the medical record, including the findings of Drs. Lopez, Morford, Oatley, Zelenka, Sanchez, and Ortiz. R. 451-53. The ALJ also discussed other largely unremarkable treatment records. R. 451-53. In particular, the ALJ noted that Claimant's lack of effort on physical and mental examinations, as well as her demeanor at the hearing supports a finding that:

> [C]laimant is not a credible reporter of pain, limitations, or mental impairments. She portrays herself as being of near invalid status, which is entirely inconsistent with the medical evidence.  She testified to a very restricted range of activities of daily living and stated that her disabled husband did all household chores, including the cooking. The evidence as a whole shows that the

10

> [C]laimant's assertions as to the severity of her impairments are
> not credible to the extent that she is disabled.  In fact, the evidence
> shows that she retains the capacity for light exertion consistent
> with her [RFC].

R.  453-54.    Thus,  the  ALJ  determined  that  Claimant's  subjective  statements  regarding  her

limitations  are  not  credible  to  the  extent  they  conflict  with  the  ALJ's  RFC  based  upon  the

medical  and  opinion  evidence,  which  conflicts  with  Claimant's  testimony,  the  Claimant's  lack  of

effort  on  examinations,  and  her  demeanor  at  the  hearing.   R.  451-54.

With  respect  to  Dr.  Ortiz's  opinions,  the  ALJ  does  not  specifically  discuss  Dr.  Ortiz's

Medical  Source  Statement  of  Ability  to  Do  Work-Related  Activities  (Mental).    R.  446-55.

However,  the  ALJ  does  state:

> Although  greater  weight  is  given  the  reports  and  opinions  of  Drs.
> Stoner,  Sieger,  Lopez,  Morford,  Rees,  Oatley,  Zelenka,  Sanchez,
> Doan,  Bowden,  and  Ortiz,  consideration  and  some  weight  has  also
> been  given  the  reports  of  other  treating,  examining  and  non-
> examining  medical  sources,  such  as  state  consultant  reports,  that
> are  consistent  with  the  medical  evidence  of  record.   In  accordance
> with  SSR  06-03p,  non-medical  source  records,  opinions  and
> testimony  that  are  consistent  with  the  record  have  also  been
> considered  and  given  some  weight,  as  well.   The  opinions  and
> records  from  any  medical  source,  including  state  agency  medical
> consultants,  that  are  inconsistent  with  the  medical  record  are  given
> little  weight.   The  [ALJ]  has  carefully  read  and  considered  all  the
> evidence,  whether  referenced  herein  or  not,  and  finds  that  the
> [C]laimant  has  the  severe  medically  determinable  impairments  set
> forth  [in  step-two].

R.  451.[5]  Thus,  the  ALJ  states  that  he  gave  the  reports  and  opinions  of  Dr.  Ortiz  "greater  weight."

R.  451.[6]

---

[5] On appeal, Claimant has raised no issues with respect to the ALJ's treatment of any other opinion or to the
treatment of the opinion evidence as a whole.

[6] After stating that he gives "greater weight" to the reports and opinions of Dr. Ortiz, the ALJ discusses Dr. Ortiz's
January 5, 2011 evaluation, including his finding that Claimant's cooperation and effort were poor and results

Based upon the testimony of the VE, the ALJ determined that Claimant could perform work as a garment sorter, maid, and laundry attendant.  R. 454-55.  Accordingly, the ALJ found that Claimant was not disabled.   R. 455.   On October 17, 2011, Claimant appealed the Commissioner's final decision to the District Court.  Doc. No. 1.

IV.   **LEGAL STANDARDS.**

A. **THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. See 20 CFR §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

---

indicate that she has a tendency to exaggerate symptoms. R. 453.  The Claimant has raised no issue with respect to the way the ALJ treated any medical evidence other than the January 18, 2011 Medical Source Statement.

12

## B.  THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

V.     **ANALYSIS**.

**A.  Dr. Ortiz's Mental Source Statement.**

Claimant argues that the ALJ erred by failing to state with particularity the weight given and the reasons therefor to Dr. Ortiz's January 18, 2011, Medical Source Statement.  Doc. No. 17 at 9-10.   The Commissioner concedes that the ALJ did not specifically mention Dr. Ortiz's Medical Source Statement.  Doc. No. 20 at 7.  However, the Commissioner argues that any error is harmless because the ALJ specifically stated that he gave "greater weight" to the reports and opinions of Dr. Ortiz, the limitations noted therein are not more limiting that those found by the ALJ, and the ALJ ultimately included all such limitations in his RFC and in his hypothetical question to the VE.  Doc. No. 20 at 5-7.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability.   The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence.  In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion <u>requiring the ALJ to state with particularity the weight given to it and the reasons therefor</u>.  *Id*. (citing 20 CFR §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on

the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981) (emphasis added)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

The Eleventh Circuit has also stated that "[w]hen . . . an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Caldwell v. Barnhart*, 261 Fed.Appx. 188, 190 (11th Cir. Jan. 7, 2008) (unpublished) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).[7]  In *Caldwell*, the claimant argued that the ALJ erred by failing to state with particularity the weight given to the opinions of two examining physicians. *Id*.  The Eleventh Circuit stated that any error was harmless because the doctors' opinions did not contradict the ALJ's findings. *Id*. at 190-91.

In this case, the ALJ stated he gave greater weight to Dr. Ortiz's reports and opinions, but in his detailed discussion of the medical opinions he failed to discuss Dr. Ortiz's Medical Source Statement.  In that opinion, Dr. Ortiz opined that despite Claimant's mental impairments she retained the ability to understand and remember simple instructions, carry out simple instructions, make judgments on simple work-related decisions, and to interact appropriately with others in a satisfactory manner over an 8-hour workday for five days per week.  R. 795-97.[8]

---

[7] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.
[8] As set forth above the Mental Source Statement asked that Dr. Ortiz to offer an opinion on Claimant's ability do work-related activities on a sustained basis and defined the same as the ability to perform work-related activities 8-

The ALJ found that Claimant is moderately limited in maintaining concentration, persistence or pace, and, in the RFC, limited Claimant to simple, routine, repetitive tasks with only occasional interaction with others.  R. 449-50.  Thus, Dr. Ortiz's opinion does not contradict the ALJ's findings and any error committed by the ALJ is harmless.  Accordingly, it is recommended that the Court reject this argument.

### B.  Concentration, Persistence, Or Pace.

The parties are in disagreement as to the manner in which an ALJ may sufficiently account for a claimant's limitations in concentration, persistence, or pace in the RFC and in a hypothetical question to the VE. Doc. Nos. 17 at 11-14; 20 at 8-11.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011), the Eleventh Circuit held that an ALJ may not generally account for a claimant's limitations in maintaining concentration, persistence, or pace by restricting the hypothetical question to simple, routine tasks, or unskilled work.  *Id.*  In *Winschel*, 631 F.3d at 1181, Court found that:

> In this case, the ALJ determined at step-two that [claimant's] mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace.  But the ALJ did not indicate that medical evidence suggested [claimant's] ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical question. . . .
>
> Because the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of [the claimant's] impairments, the vocational expert's

---

hours a day for five days a week.  R. 795.  The form also defines "moderate" as "more than a slight limitation . . . but the individual is still able to function satisfactorily."  R. 795.

> testimony is not "substantial evidence" and cannot support the
> ALJ's conclusion that [the claimant] can perform significant
> numbers of jobs in the national economy.

*Id*.  Thus, because the ALJ in *Winschel* did not indicate that the medical evidence suggested the

claimant could still work despite limitations in maintaining concentration, persistence or pace,

nor did the ALJ otherwise implicitly account for the limitation in the hypothetical question, the

Eleventh Circuit remanded the case for the ALJ to pose a hypothetical question to the vocational

expert which specifically accounted for the claimant's moderate limitations in maintaining

concentration, persistence, and pace.  *Id*.

In *Scott v. Commissioner of Social Security*, 2012 WL 5358868 at *2 (11th Cir. Oct. 31,

2012), the Eleventh Circuit more recently clarified that:

> [W]hen medical evidence demonstrates that a claimant can engage
> in simple, routine tasks or unskilled work despite limitations in
> concentration, persistence, and pace, courts have concluded that
> limiting the hypothetical to include only unskilled work
> sufficiently accounts for such limitations.  Additionally, other
> circuits have held that hypothetical questions adequately account
> for a claimant's limitations in concentration, persistence, and pace
> when the questions otherwise implicitly account for these
> limitations.

*Id*. (quoting *Winsche*l, 631 F.3d at 1180-81).[9]  The court held that the ALJ correctly found the

medical evidence showed Scott could complete simple tasks on a regular basis and adequately

accounted for his moderate limitations in concentration, persistence, or pace by limiting his

hypothetical to work that would require low stress, simple, unskilled, one, two or three step

instructions.   *Id*.  Thus, where the medical evidence demonstrates that a claimant can still

engage in simple, routine tasks or unskilled work despite limitations in maintaining

concentration, persistence, or pace, or the ALJ otherwise accounts for such limitations in the

---

[9] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.

hypothetical question to the vocational expert, the ALJ has adequately addressed such limitations. *Id. See also Jarrett v. Commissioner of Social Security*, 422 Fed.Appx. 869, 871-72 (11th Cir. 2011) (unpublished) (citing *Winschel*, 631 F.3d at 1181); *Dawson v. Commissioner of Social Security*, Case No. 6:11-cv-1128-Orl-31KRS, 2012 WL 1624267 at *2 (M.D. Fla. May 9, 2012) (*Winschel* "did not hold that limitations in concentration, persistence, or pace can never be accounted for by a functional limitation to performing simple, routine tasks or unskilled work.").

In this case, the ALJ found at step-two that the Claimant has moderate limitations in the ability to maintain concentration, persistence, or pace.  R. 449.  The ALJ also stated that the limitations contained with the RFC reflect the degree of limitation the ALJ found at step-two.  R. 449.   In the decision, the ALJ gave "greater weight" to the opinions of Drs. Ortiz and Zelenka. R. 449.  As set forth above, Dr. Ortiz's Mental Source Statement supports the finding that despite Claimant's mental impairments, she retains the ability to perform simple, routine, repetitive tasks with occasional interaction with others.  R. 795-797.   Dr. Zelenka's opinion, that despite Claimant's moderate limitations in concentration, persistence or pace, she remains capable of carrying out simple instructions and to adequately relate to others in a routine work setting also supports the ALJ's findings.  R. 338.  The ALJ's hypothetical question to the VE included a restriction to simple, routine, repetitive tasks with occasional interaction with others.  R. 821-22. Thus, the ALJ adequately accounted for Claimant's moderate limitations in concentration, persistence or pace in his RFC and in his hypothetical question to the VE.  Accordingly, it is recommended that the Court reject this argument.

**C.  Claimant's Testimony.**

Claimant alleges that the ALJ's credibility determination is not based on the correct legal standard and is not supported by substantial evidence.  Doc. No. 17 at 14-16.  More specifically, the Claimant maintains that the ALJ engaged in impermissible "sit and squirm jurisprudence" and made inaccurate factual findings.  Doc. No. 17 at 15-16.[10]  In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or (3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).[11]  "20 CFR § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); 20 CFR § 404.1529.[12]  Thus once the pain standard is satisfied, the issue becomes one of credibility.

---

[10] With respect to the allegedly inaccurate factual findings, Claimant argues that she did not testify that her husband and son do all the household chores and the cooking, but rather that her husband does what he can, and her son and a friend do the household chores, laundry, and cooking.  Doc. No. 17 at 15.

[11] "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." Social Security Ruling 88-13.

[12] Social Security Ruling 96-7p provides: "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id.* at 1561-62. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562. The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Id.*

An "ALJ is not prohibited from considering the claimant's appearance and demeanor during the hearing." *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987). Rather, an ALJ is prohibited from engaging in "sit and squirm jurisprudence," which is basing a decision or credibility determination solely upon subjectively arriving at an index of traits which he would expect a claimant to manifest at the hearing. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). In this case, the ALJ determined that Claimant's subjective statements are not credible based upon: 1) the findings of Drs. Lopez, Morford, Oatley, Zelenka, Sanchez, and Ortiz, which include suggestions that Claimant may be malingering; 2) other largely unremarkable treatment records; 3) Claimant's lack of effort on physical and mental

---

the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.*

examinations; and 4) her demeanor and statements at the hearing.  R. 451-53.  Thus, the ALJ did not focus solely on the Claimant's demeanor at the hearing in making his credibility determination, but simply listed it as one of the factors he considered.  Therefore, it is recommended that the Court reject the Claimant's argument that the ALJ engaged in "sit and squirm jurisprudence," and that the ALJ's reasons for finding Claimant's subjective statements not credible are supported by substantial evidence.

VI.     **CONCLUSION**.

      Based on the above stated reasons, it is **RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED** and the Clerk be directed to close the case.

      Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

      **RECOMMENDED** in Orlando, Florida on January 28, 2013.

_____

GREGORY J. KELLY

UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Richard A. Culberston
3200 Corrine Dr.
Orlando, FL 32803

John F. Rudy, III
U.S. Attorney's Office

Suite 3200
400 N. Tampa St.
Tampa, Florida          33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Richard V. Blake, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Patrick F. McLaughlin
Administrative Law Judge
c/o Social Security Administration
Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224